OPINION
{¶ 1} Appellant Johnny Lovett appeals from a verdict in his favor that nonetheless awarded him zero dollars in damages.
 {¶ 2} Lovett's claims arose out of a three-car accident that occurred on February 22, 1998. At the time of the accident, the Appellee, Drew Wenrich, was traveling southbound on Keowee Street in Dayton and Lovett was traveling westbound on Third Street. Lovett and another driver had just proceeded into the intersection of Keowee and Third Street when Wenrich failed to stop at the stop light. Consequently Wenrich's auto was hit broadside by Lovett's vehicle and the other car.
 {¶ 3} Lovett was not sure how fast he was traveling at the time of impact. He claimed that after his light turned green, he accelerated into the intersection at a normal rate of speed and heard something to his right (which was likely the other car colliding with Wenrich). According to Lovett, Wenrich then came into view, at which time Lovett applied his brakes, but was unable to avoid colliding with him.
 {¶ 4} Lovett claimed that he was thrown forward and then backward at the time of impact and, that except for possibly hitting the steering wheel, he did not come into contact with any other part of the vehicle. He also did not have any bruises or lacerations. Furthermore, the police report indicated that Lovett was not injured. Lovett did say there was some damage to the front end of his car. However, he was able to drive back to Cincinnati from Dayton following the accident.
 {¶ 5} Wenrich described both the impact of the other car and Lovett's car as light. He claimed Lovett's impact was the lighter of the two.
 {¶ 6} After the accident, Lovett continued to work and did not seek treatment for his claimed injuries until March 13, 1998. At that time he went to Dr. Wayne Amendt, an orthopedic surgeon. The medical records of Dr. Amendt show that Lovett had pronounced tenderness and a substantially decreased range of motion. Dr. Amendt ordered pain relievers and muscle relaxers, and recommended chiropractic care with Dr. Chris Brosnahan.
 {¶ 7} Dr. Brosnahan diagnosed a cervical and thoracic sprain/strain secondary to the motor vehicle accident and initiated treatment. Dr. Brosnahan treated Lovett eleven times and then referred him back to Dr. Amendt. He was then sent to Dr. Carl Shapiro, who found that Lovett was suffering from cervical strain/sprain. Dr. Shapiro prescribed medications, steroids, and exercise-based therapy. Believing that Lovett was an LPN, Dr. Shapiro took Lovett off work. As it turned out, Lovett was not an LPN. Instead, he was a telemarketer and inventory specialist. Eventually, Dr. Shapiro had to discharge Lovett for repeatedly failing to appear for scheduled appointments.
 {¶ 8} Lovett was involved in several accidents before and after the February 1998 collision. Nonetheless, Lovett claims injury only from the February 1998 collision with Wenrich.
 {¶ 9} At trial, the jury was instructed that Wenrich admitted negligence and that Lovett had suffered some injury as a result of that negligence. The jury was instructed that its duty was to decide the nature and extent of Lovett's injury and determine the damages. After the jury returned a verdict for Lovett in the amount of zero dollars, Lovett filed a motion for a judgment notwithstanding the verdict, or in the alternative a new trial. This motion was denied by the trial court.
 {¶ 10} Lovett then filed a timely notice of appeal, asserting the following assignments of error:
 {¶ 11} "I. The trial court abused its discretion by not finding that the jury's verdict was inadequate and against the manifest weight of the evidence.
 {¶ 12} "II. The trial court abused its discretion by admitting opinion testimony from Dr. Paley."
 {¶ 13} After reviewing the record and applicable law, we find that the first assignment of error has merit. We therefore reverse the trial court's judgment and remand this matter for a new trial.
 I. {¶ 14} Lovett has broken his first assignment of error into three parts. First Lovett argues that the jury's verdict awarding zero dollars in damages for pain and suffering cannot be reconciled with the undisputed evidence. Lovett calls attention to Civ.R. 59(A)(4) which states that a new trial shall be granted if there are "excessive or inadequate damages, appearing to be given under the influence of passion or prejudice." However, Lovett has failed to demonstrate in the record where there was any evidence of passion or prejudice. Therefore, we do not find that this argument has any merit.
 {¶ 15} Lovett argues in the second and third part of his first assignment of error that, (1) the jury's verdict of zero dollars in damages for medical bills was against the manifest weight of the evidence, and (2) the trial court abused its discretion by not granting a new trial. Under Civ.R. 59(A)(6), a new trial shall be granted when "the judgment of the trial court is not sustained by the manifest weight of the evidence."
 {¶ 16} The standard for deciding whether a judgment is sustained by the manifest weight of the evidence is borrowed from criminal cases and states that "the court, eviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 17} The general standard applied to cases where a new trial is sought is that "`an order granting a new trial should not be reversed on appeal absent an abuse of discretion.'" Pryor v. Tooson, Clark County App. No. 2002-CA-91, 2003-Ohio-2402, ¶ 27, citing Meyer v.Srivastava (2001), 141 Ohio App.3d 662, 667. An abuse of discretion has been defined as "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 18} Before we consider the merits of this argument we should briefly address a procedural issue raised by Wenrich. Specifically, Wenrich notes that under App.R. 9(B) if the appellant intends to argue on appeal that the verdict was against the manifest weight of the evidence, then the appellant must include in the record a transcript of evidence relevant to the findings or conclusions. Wenrich further observes that he had to supplement the record because Lovett failed to include all relevant items. Consequently, Wenrich argues that the appeal should be denied because an adequate record was not filed. However, we reject this argument because Wenrich has failed to demonstrate what relevant parts of the record are not now before this court. In addition, we deem the record sufficient to determine the merits of the assignments of error.
 {¶ 19} Returning now to the merits of the case, Lovett's main contention is that the verdict was against the manifest weight of the evidence because all the doctors who testified agreed that Lovett had some sort of injury. Consequently, since there is no dispute that an injury occurred, some damages should have been awarded. Lovett also argues that the facts used to deny the motion for a judgment notwithstanding the verdict, or in the alternative a new trial, relate merely to the severity of Lovett's injury as opposed to justifying a zero verdict.
 {¶ 20} In contrast, Wenrich relies on the facts outlined by the trial court judge in the judgment entry denying a new trial. Specifically, those facts are:
 {¶ 21} (1) The impact or collision was minimal;
 {¶ 22} (2) The Plaintiff did not complain of injuries at the scene;
 {¶ 23} (3) The Plaintiff drove his vehicle from the scene of the accident;
 {¶ 24} (4) The Plaintiff did not seek medical treatment for alleged injuries until three weeks after the accident;
 {¶ 25} (5) The Plaintiff's medical records indicated that his physician had treated him for similar complaints (pre-existing intermittent neck complaints since 1994);
 {¶ 26} (6) The Plaintiff was involved in another accident within a short time after this accident and sought treatment for neck and other ligament strains;
 {¶ 27} (7) The Plaintiff was discharged by his treating physicians and by a pain management clinic for being non-compliant; and
 {¶ 28} (8) Diagnostic testing consisting of MRI's and x-rays referred to by the Plaintiff's treating physicians and referenced in Dr. Paley's opinion reflect that the Plaintiff was suffering from pre-existing degenerative disc disease.
 {¶ 29} Although these facts could possibly be used to explain a very minimal award of damages, they do not adequately explain an award of zero damages.
 {¶ 30} Wenrich also relies on the case of Haller v. Daily (April 18, 2003), Montgomery App. No. 19420. In Haller, there was testimony that the appellant only suffered a mild muscle/ligament strain, and that any continuing pain was due to arthritis. The jury in that case awarded damages for medical bills, but no damages for pain and suffering. In the present case, the circumstances are analogous, as Lovett suffered a mild muscle/ligament strain and also had pre-existing degenerative disc disease. However, Haller is easily distinguishable since the jury at least awarded some damages for medical expenses, even though nothing was awarded for pain and suffering. Conversely, in the present case, the jury did not award damages for pain and suffering or for medical expenses. Therefore, Wenrich's reliance on Haller is misplaced.
 {¶ 31} As an additional matter, Wenrich argues that the evidence was disputed. Wenrich focuses on Dr. Paley's conclusion that the type of injury sustained by Lovett should have resolved in two to three weeks. Therefore, Wenrich claims that the medical bills cannot be attributed to the February 1998 accident because Lovett did not seek treatment right away.
 {¶ 32} At trial, Lovett called two witnesses on his behalf, Dr. Brosnahan and Dr. Shapiro. Dr. Brosnahan testified that Lovett's claimed injury could have taken six to nine months to heal. Dr. Shapiro testified that Lovett suffered from a mild muscle ligament strain/sprain that was caused by the February 1998 accident.
 {¶ 33} Wenrich called one witness, Dr. Joseph Paley. Dr. Paley found that Lovett sustained a mild muscle ligament strain which should have subsided within two to three weeks after the accident. Dr. Paley also stated that the strain could have taken as long as two to three months to heal, and rarely would have taken longer to heal.
 {¶ 34} In reviewing the testimony of the three doctors, it is clear that the evidence is not in dispute. All doctors agree that Lovett sustained an injury proximately caused by the automobile accident on February 22, 1998. Also, all doctors agree that the injury would not have subsided any earlier than two to three weeks after the accident. The medical records of Dr. Amendt show that Lovett first sought treatment for this injury on March 13, 1998. This would be twenty days after the February 22, 1998, accident. This, although barely, falls within the two to three-week period agreed on by all doctors who testified.
 {¶ 35} A useful analysis was applied in Walker v. Holland
(1997), 117 Ohio App.3d 775. In Walker, we said that:
 {¶ 36} "In order for the medical bills to be the subject of compensatory damages, plaintiffs were required to establish a causal connection between the defendant's negligence and the expenses, and expert testimony was required to establish the necessity of the treatment which resulted in the billings. On the other hand, simply because plaintiffs' expert testified that the billings were necessitated by the accident, they are not automatically entitled to prevail on the question of necessity, even where their expert's testimony on that point is not directly controverted by defendant's evidence so long as there appear in the record objectively discernible reasons upon which the jury could rely to reject the expert's opinion testimony." Id at 793.
 {¶ 37} After applying the standard in Walker, we do not find in the record any objectively discernible reasons for the jury to reject the expert opinion testimony of all three doctors that an injury occurred. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment most favorable to sustaining the verdict and judgment." Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. Here, because the evidence could not be interpreted in more than one way, we cannot construe the evidence in favor of the verdict.
 {¶ 38} Although Lovett's treatment fell barely within the realm of time agreed on by all doctors, he did seek treatment before the end of the three-week time frame. Furthermore, all doctors agreed that some injury occurred. Based on the undisputed facts, the jury could have found that very minimal damages were necessary, but the jury could not reasonably have made a finding of zero dollars in damages. Therefore, Lovett is at least entitled to compensation for any treatment received within the pertinent time frame. Because the jury failed to award compensation for this treatment, the verdict was against the manifest weight of the evidence. For the same reason, the trial court's denial of a new trial was an abuse of discretion. Accordingly, we must reverse the judgment.
 {¶ 39} Based on the preceding discussion, Lovett's first assignment of error is sustained.
 II. {¶ 40} Although the second assignment of error has been rendered moot, we will briefly discuss the issues involved in order to guide the trial court on remand. In this assignment of error, Lovett alleges that the trial court abused its discretion by admitting opinion testimony from Dr. Paley. As we mentioned earlier, "an abuse of discretion is more than an error of law or judgment, it implies that the attitude of the court is unreasonable, arbitrary, or unconscionable." Blakemore, 5 Ohio St.3d 217,219.
 {¶ 41} In support of this assignment of error, Lovett raises two main points. First, Lovett claims that Dr. Paley was improperly asked during a hypothetical question to assume facts that were not in the record. In this regard, Evid. R. 703 states that "the data or facts in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted into evidence at the hearing."
 {¶ 42} According to Lovett, the hypothetical question included the following items that were not admitted into evidence:
 {¶ 43} 1) the industrial reports of Dr. Chavez, Dr. Randolph and Dr. Schmerler;
 {¶ 44} 2) that Lovett went to the chiropractor a few times (when the actual number of visits was eleven) and;
 {¶ 45} 3) that Dr. Amendt's initial exam of Lovett showed only some limitation and tenderness (when the actual findings were substantial limitation and pronounced tenderness).
 {¶ 46} Lovett argues, citing several cases, that when an expert's opinion is not based upon facts that are within the expert's own personal knowledge or upon other facts admitted into evidence, the opinion must be stricken.
 {¶ 47} Before trial, Lovett filed a motion in limine to prevent the hypothetical question asked of Dr. Paley from being admitted. The trial court stated that it was not sure what evidence would be introduced at trial and therefore could not rule on the motion at that time. The trial court went on to say it had marked thirty to thirty five points in the hypothetical question and would rule on them at trial before Dr. Paley's testimony was to be heard by the jury. At trial, the judge noted that all of the objections made by Lovett were overruled and the testimony of Dr. Paley would be heard in its entirety.
 {¶ 48} "As long as an expert bases his opinion at least in major part on facts or data perceived by him or admitted into evidence, then Evid. R. 703 has been satisfied." Farkas v. Detar (1998),126 Ohio App.3d 795, 798, citing State v. Solomon (1991),59 Ohio St.3d 124, 126. In Dr. Paley's deposition, the following exchange occurred:
 {¶ 49} "Q: And it's your opinion based upon what you've heard that John Lovett did suffer an injury to his neck as a result of this motor vehicle crash, is that correct?
 {¶ 50} "A: No, that is not correct. It's based upon my clinical experience plus the history that the patient gave me."
 {¶ 51} This exchange clearly indicates that the principal part of Dr. Paley's opinion was not based on the evidence that is being disputed. Instead, Dr. Paley's opinion was based on his experience and the history related by Lovett. Consequently, we reject the claim that Dr. Paley's opinion was improperly based on facts not in evidence.
 {¶ 52} Lovett's next contention is that the hypothetical question asked of Dr. Paley was confusing and misleading. In this context, Lovett relies on Evid. R. 403, which provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Under such circumstances, the court has the power to exclude the evidence.
 {¶ 53} Lovett argues that the hypothetical question misled the jury because it was15 pages in length, referenced medical records from six years prior to the accident and several years after, and was not in chronological order. However, Wenrich contends that Lovett had an extensive medical record that was summarized in the 15 pages, and the question had to be long to be fair and accurate.
 {¶ 54} Trial courts have broad discretion in determining the admission of evidence. State v. Myers (February 12, 1999), Greene App. No. 96-CA-38, 1999 WL 94917, *15. The decision of the trial court, absent an abuse of discretion, will not be disturbed on appeal. Id. Although the question asked of Dr. Paley is long and extensive, the trial court did not indicate that it found the question confusing or misleading. Likewise, Dr. Paley did not say that he found the question confusing or misleading. After reviewing the question, we did find that it was long. However, the question, read in context with the rest of testimony, was coherent and was expressed in terms that were not confusing or misleading.
 {¶ 55} In this case, we see no abuse of discretion by the trial court in permitting admission of the hypothetical question. Therefore, the second assignment of error is overruled.
 {¶ 56} Based on the above discussion, the first assignment of error is sustained and the second assignment of error is overruled. Accordingly, the trial court judgment is reversed and this matter is remanded for further proceedings.
WOLFF, J., and YOUNG, J., concur.